UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MAJOR KHAN, | : | CIVIL ACTION NO. 05 CV 4922 (SHS) |
| Plaintiff, | : | JURY TRIAL DEMANDED |
| vs. | : | COMPLAINT |
| UBS FINANCIAL SERVICES, INC., | : | ECF CASE |
| Defendant. | : | |

## COMPLAINT

Plaintiff Major Khan ("Plaintiff" or "Khan"), by and through his counsel of record, brings this Complaint against UBS Financial Services, Inc. ("UBS"), and alleges upon personal belief as to himself and his own acts, and as for all other matters upon information and belief, based upon the investigation made by and through his attorneys, as follows:

### I. NATURE OF THE ACTION

1.  Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), and the Civil Rights Act of 1866, 42 U.S.C. § 1981, for compensatory and punitive damages, arising from the terms and conditions of his employment by UBS.

### II. PARTIES

2.  Plaintiff Major Khan was born in Nairobi, Kenya, of Indian parents and is an American citizen.

3.  Defendant UBS Financial Services, Inc., is incorporated under the laws of the State of Delaware, with its corporate headquarters located at 1285 Avenue of the Americas, New

York, New York. UBS is a multi-faceted financial services corporation which includes investment banking and brokerage operations. For purposes of this Complaint, the term "UBS" includes UBS Financial Services, Inc., and its predecessor Paine Webber, Inc.

### III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that the acts and omissions giving rise to this action occurred in this District.

6. Plaintiff filed an administrative claim with the New York City office of the Equal Employment Opportunity Commission on March 3, 2004, and received a right to sue notice letter dated June 29, 2004.

7. UBS has entered into consecutive Tolling Agreements with Plaintiff dated July 7, 2004 (covering the period July 7 to July 28, 2004) and August 6, 2004 (covering July 28, 2004, until terminated effective as of March 4, 2005) that tolled the running of the statutes of limitation relevant to this Complaint.

### IV. FACTUAL ALLEGATIONS

8. Plaintiff was employed by UBS (including its predecessor, Paine Webber, Inc.) from April 1995 to October 2003, at its Weehawken, N.J. office, during which time UBS subjected Plaintiff to a pattern and practice of discrimination based on race, color or national origin.

9. Plaintiff completed the UBS management development program. As part of a so-called "talent review," he was rated as having "high potential" and his "ultimate position" with

UBS was identified as "branch manager and potential regional director." Despite this assessment and glowing performance reviews, he was not provided with the support or career planning services that Caucasian graduates of the program received. Further, Plaintiff was denied promotion to leadership positions at branch offices despite his record of achievement in various positions, including Associate General Counsel, Corporate Vice President, and Associate Director of National Recruiting. In each instance, a less qualified Caucasian was appointed to these positions. At the time Plaintiff was seeking these positions, UBS employed approximately 385 branch managers, of whom one was African American and one was Asian American. Mr. Khan was one of only a few people in his management training class not to be promoted to a managerial position at a branch.

10. In each of his positions at UBS, Plaintiff was compensated less than his similar situated Caucasian colleagues.

11. Plaintiff was routinely and continually subjected to oral and written ethnic slurs and harassment by Caucasian employees and supervisory personnel employed by UBS, including Plaintiff's direct supervisors, including, but not limited to:

   a) being called a "towel head;"

   b) mocking references to his family owning 7-11 stores or newspaper stands or providing access to oriental rugs;

   c) referring to him as resembling a terrorist, posing a security threat or carrying a bomb;

   d) stereotypical statements that female employees would find it difficult to work for Plaintiff due to his national origin; and

    e)  pointed inquiries into his ethnic and religious background.

  12.  The existence of the behavior referenced above was widely known throughout the UBS offices where Plaintiff worked but was allowed to continue without any adverse consequences to the people engaging in such conduct. Plaintiff's complaints regarding this conduct went unanswered.

  13.  Plaintiff received regular performance reviews which generally rated him as "2" or "Exceeds Standards." In approximately September 2003, Plaintiff was advised that he would be so rated on his current performance review.

  14.  UBS management was aware that Mr. Khan had taken a particular interest in informing himself about UBS's record in promoting non-Caucasian employees and implementing its diversity policies. UBS was further aware that Mr. Khan had asserted his belief that UBS's performance was inadequate in those regards.

  15.  Defendant terminated Plaintiff on October 28, 2003, without providing any reasons and without following UBS guidelines which require at least one formal warning in advance of termination. Caucasian employees were not terminated in this fashion. Plaintiff was replaced by a Caucasian employee. Plaintiff's termination was in retaliation for his speaking out about UBS's unequal treatment of minority employees, including himself.

  16.  Following his termination, UBS continued to discriminate and retaliate against Plaintiff by noting on his U-5 that he had been discharged for reasons of "Performance. (Non-Compliance/Non Sales Practice Related)" [*sic*]. Form U-5s are filed with the National Association of Securities Dealers (NASD) and may be accessed by any future employer.

## COUNT I
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e *et seq.*

17. Plaintiff realleges and incorporates by reference paragraphs 1-16, above.

18. Plaintiff filed a Charge of Discrimination with the EEOC and received a right to sue notice dated June 29, 2004.

19. UBS discriminated against Plaintiff with respect to the terms and conditions of employment, including compensation and promotion, because of his race, color or national origin.

20. UBS subjected Plaintiff to a hostile work environment based on his race, color or national origin.

21. Plaintiff engaged in protected activity by complaining about the discrimination and hostile environment to which he was subjected.

22. UBS retaliated against Plaintiff by and through such acts that include, but are not limited to, the termination of Plaintiff's employment and making adverse and inaccurate comments on his U-5.

23. UBS's conduct has been intentional and/or has had a disparate impact on Plaintiff with respect to the terms and conditions of his employment.

24. UBS's conduct, as alleged herein, violated and continues to violate Title VII of the Civil Rights Act of 1964. Plaintiff is entitled to injunctive relief and an award of compensatory and punitive damages in an amount to be determined at trial. Plaintiff also seeks an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II
## THE CIVIL RIGHTS ACT OF 1866
## 42 U.S.C. § 1981

25.     Plaintiff realleges and incorporates by reference paragraphs 1-16, above.

26.     UBS discriminated against Plaintiff by denying him the same rights enjoyed by Caucasian employees with regard to the making, performance, modification and termination of his employment relationship with UBS and with regard to the enjoyment of all benefits, privileges, terms and conditions of that relationship based on his race, color or national origin.

27.     UBS subjected Plaintiff to a hostile work environment based on his race, color or national origin.

28.     Plaintiff engaged in protected activity by complaining about the discrimination and hostile environment to which he was subjected.

29.     UBS retaliated against Plaintiff by and through such acts that include, but are not limited to, the termination of Plaintiff's employment and making adverse and inaccurate comments on his U-5.

30.     UBS's conduct has been intentional, deliberate, willful and conducted in callous disregard of Plaintiff's rights under the law.

31.     UBS's conduct, as alleged herein, violated and continues to violate 42 U.S.C. §1981. Plaintiff is entitled to injunctive relief and an award of compensatory and punitive damages in an amount to be determined at trial. Plaintiff also seeks an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment for Plaintiff:

a. Enjoining Defendant from failing to remove from his U-5 any and all references to his discharge being due to performance issues.

b. Awarding Plaintiff compensatory and punitive damages justified under the circumstances;

c. Awarding attorneys' fees and reimbursement of costs associated with this action to Plaintiff's counsel;

d. Awarding Plaintiff such other and further legal and equitable relief as may be appropriate in the interest of justice, including but not limited to back pay.

Dated: May 23, 2005          By: _____
GARWIN GERSTEIN & FISHER, LLP
Bruce E. Gerstein (BEG 2726)
Brett Cebulash (BC 0044)
Archana Tamoshunas (AT 3935)
1501 Broadway, Suite 1416
New York, New York 10036
Tel:   212-398-0055
Fax:   212-764-6620

BERGER & MONTAGUE, P.C.
Stephen A. Whinston
Shanon J. Carson
Selim Ablo
1622 Locust Street
Philadelphia, PA 19103
Tel:   215-875-3000
Fax:   215-875-3053

Attorneys for Plaintiff