UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
MAJOR KHAN,　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Plaintiff,　　　　　　 :　　05 CV 4922 (SHS) (DF)
　　　　　　- against -　　　　　　　　　　　:　　ELECTRONICALLY FILED
　　　　　　　　　　　　　　　　　　　　　　:
UBS FINANCIAL SERVICES, INC.,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Defendant.　　　　　　 :
------------------------------------------------- X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

EPSTEIN, BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211

212.351.4500

Attorneys for Defendant

NY:1355219v4

## PRELIMINARY STATEMENT

Defendant UBS Financial Services Inc. ("Defendant" or "UBSFS"), by its attorneys, Epstein Becker & Green, P.C., hereby submits this memorandum of law in support of its motion for sanctions for spoliation of evidence.

Plaintiff Major Khan ("Plaintiff"), an attorney licensed in the State of New York, began working in UBSFS' Legal Department as a temporary contract attorney in 1994. In 1995, Plaintiff was hired as a regular staff attorney in the Legal Department and in 2001, pursuant to his request, he was transferred from the Legal Department to a business role within UBSFS. At the time that Plaintiff was terminated on October 28, 2003, he held the position of Associate Director of National Recruiting.

Plaintiff commenced this action on May 23, 2005 alleging discriminatory pay, failure to promote and termination; hostile work environment based on his race, color and national origin; and retaliation. On November 14, 2005, UBSFS served Plaintiff with its First Request for Production of Documents. ("UBSFS Requests"). Therein, UBSFS requested, *inter alia*, audio tape recordings concerning communications Plaintiff had had with anyone regarding his allegations, all personal laptop computers and all documents pertaining to Plaintiff's job search efforts subsequent to his termination. During the course of discovery, despite being on notice of said requests, Plaintiff engaged in deliberate and repeated acts of spoliation, thereby depriving UBSFS of documentary evidence likely to have assisted it in defending this lawsuit. These acts included: (1) spoliation and ultimate loss of a surreptitiously made tape recording of Plaintiff's conversation with coworker Joseph "Jay" Tota ("Tota") in which Plaintiff claims that Tota told Plaintiff that he should sue UBSFS; (2) wiping clean the hard drive of Plaintiff's personal laptop computer and giving the computer to his nephew, who resides out of state, <u>after</u> receipt of UBSFS' Request for Production of Documents that explicitly called for production of

the laptop computer; and (3) Plaintiff's failure to preserve his file concerning his alleged job search efforts subsequent to his termination. Accordingly, UBSFS now moves this Court for an Order:

    1) directing that the following adverse inference instructions will be given to the jury: (a) the jury may infer from the spoliation of the tape recording of Plaintiff's post-termination conversation with Tota that the tape would not support Plaintiff's testimony as to the substance of this conversation; (b) the jury may infer from Plaintiff's spoliation of his laptop computer subsequent to his receipt of UBSFS' demand for its production that the computer contained documents and information that would not support Plaintiff's claims and/or would contradict Plaintiff's allegations and testimony in this action; and (c) the jury may infer from Plaintiff's failure to preserve the documents concerning his alleged job search efforts that these documents would not support Plaintiff's allegations and testimony concerning his alleged job search efforts; or in the alternative

    2) prohibiting Plaintiff from introducing at trial any evidence concerning his post-termination conversation with Tota, any matters as to which the Court concludes the spoliated laptop contained relevant evidence and Plaintiff's alleged mitigation efforts; and

    3) awarding UBSFS its attorneys' fees and costs incurred in making this motion; and

    4) awarding UBSFS such other and further relief and imposing such other sanctions on Plaintiff as the Court deems just and proper.

## THIS COURT SHOULD SANCTION PLAINTIFF FOR HIS SPOLIATION OF RELEVANT EVIDENCE

This Court should sanction Plaintiff, in the form of adverse inferences and preclusion of evidence, for his spoliation of relevant evidence. Spoliation is "the destruction or

significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 2001). The Court has the inherent power to sanction a party that destroys relevant and discoverable evidence. See Shaffer v. RWP Group, Inc., 169 F.R.D. 19, 24 (E.D.N.Y. 1996) (citations omitted). The spoliation of evidence germane "to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998). The sanction of an adverse inference serves a threefold purpose of: (1) deterring parties from destroying evidence; (2) placing the risk of erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation. See West, 163 F.3d at 779.

The party requesting the adverse inference must show that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a "culpable state of mind"; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact would find that it would support the claim or defense. Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001). A party has a duty to preserve evidence that it knows or should have known is relevant to pending, imminent or reasonably foreseeable litigation. Shaffer, 169 F.R.D. at 24. A "culpable" state of mind includes bad faith and gross or even ordinary negligence. Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002); Byrnie, 243 F.3d at 109; Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees & Restaurant Employees Int'l Union, 212 F.R.D. 178, 219 (S.D.N.Y. 2003). Lastly, when evidence is destroyed in bad faith or

through gross negligence, that fact alone is generally sufficient to permit a jury to conclude that the missing evidence is favorable to the prejudiced party. See Residential Funding, 306 F.3d at 109, Anderson v. Sotheby's Inc. Severance Plan, No. 04 Civ. 8180, 2005 WL 2583715, at *3 (S.D.N.Y. Oct. 11, 2005). Moreover, even in cases where the court does not find bad faith, the prejudiced party is not held to a strict standard of proof regarding the likely contents of the destroyed evidence. Kronisch, 150 F.3d at 128; Pastorello v. City of N.Y., No. 95 Civ. 470, 2003 WL 1740606, at * 12 (S.D.N.Y. April 1, 2003). Consequently, a party seeking an adverse inference need not offer any extrinsic evidence to suggest the contents of the destroyed evidence, and may rely solely upon circumstantial evidence. Id.

In this case, Plaintiff had an obligation to preserve the evidence at issue, which he destroyed with the requisite "culpable state of mind." There can be no dispute that the spoliated evidence relates to UBSFS' defenses in this action and there is sufficient evidence to conclude that the destroyed evidence was favorable to UBSFS. Accordingly, the Court should grant sanctions in the form of adverse inferences, or at the very least preclusion of evidence.

A.  Plaintiff's Spoliation of the Tape Recording

Plaintiff responded to UBSFS' Request on January 9, 2006, stating that with respect to Request No. 29 "[a]ll responsive documents in Plaintiff's possession, custody or control will be produced." (Declaration of Barbara A. Gross ("Gross Decl."), ¶ 2)[1] Thereafter, on January 11 and February 9, 2006, UBSFS received Plaintiff's document productions, which did not include any tape recordings whatsoever. (Gross Decl., ¶ 3.)

It thus, came as a surprise to UBSFS when Plaintiff testified at his February 15, 2006 deposition that he had secretly taped a post-termination conversation between himself and Tota, a former co-worker in UBSFS' National Recruiting Department. (Gross Decl., ¶ 4 at

---

[1] The exhibits referenced herein are attached to the Declaration of Barbara A. Gross, submitted herewith.

23:20-24:7; 25:17-19.) Plaintiff further testified that he had turned the tape recording over to his attorneys around the time that UBSFS' document requests were received. (Id., 25:20-22, 40:23-41:9.) When UBSFS demanded immediate production of the original tape recording, Plaintiff's counsel expressed surprise that the tape had not been produced and agreed to produce it. (Id., 25:22-26:16.) Plaintiff's counsel further admitted, on the record, that they had spoliated the original tape in an attempt to "get rid of some of the background noise." (Id., 25:20-26:16). At that time, Plaintiff's counsel did not inform UBSFS' counsel that in fact the original tape was no longer in their possession because, without making a copy of the tape or taking any steps to ensure that it would be properly safeguarded, they had sent it to an outside vendor with the express intention of having it further spoliated in an attempt to get a clearer copy. (Gross Decl., ¶ 5).

Request No. 29 of UBSFS' Request sought "[a]ll documents, including, but not limited to, audio and video tape recordings, transcripts, notes, statements, affidavits, and declarations concerning any conversations or communications Plaintiff has had with anyone, including, but not limited to, UBSFS employees or agents, former or present, regarding this action or the allegations in the First Amended Complaint." (Gross Decl., ¶ 6)

Thereafter, on three separate occasions, February 16, 24 and 28, 2006, UBSFS' counsel requested production of the tape. (Gross Decl., ¶ 7). Having received no response to its repeated requests, on March 2, 2006, UBSFS wrote to the Court seeking an order compelling production of the tape prior to the scheduled resumption of Plaintiff's deposition and any deposition of Tota. (Gross Decl., ¶ 8) That same day, Plaintiff's counsel wrote to UBSFS' counsel and the Court, admitting that, without making a copy, they had sent the original tape recording to an outside vendor, in January 2006, approximately six weeks after receiving

UBSFS' Request, and that the vendor made no copy and subsequently lost the original tape. (Gross Decl., ¶ 5).

The circumstances here clearly warrant an adverse inference instruction to the jury. Plaintiff unquestionably had an obligation to preserve the tape recording, as according to him it contains a statement by Tota that Plaintiff should sue UBSFS, and it is relevant to the nature of Plaintiff's relationship with Tota, which is central to UBSFS' defense to Plaintiff's hostile work environment claim. Indeed, Plaintiff admitted at his February 15, 2006 deposition that he knew he had a duty to preserve the tape recording. (Gross Decl., ¶ 4 at 25:20-22; 40:23-41:9, 537:16-24.) Moreover, Plaintiff's counsel admitted that they did not turn over the original tape recording to the outside vendor until January 6, 2006, more than six weeks after receipt of UBSFS' Request, to which they knew the tape was responsive. (Id., 25:20-26:6, ¶ 5).

There is more than sufficient evidence in the record to infer bad faith, or, at a minimum, negligence, with respect to the loss of the original tape recording. First, after receiving UBSFS' Request, to which the tape was undisputedly responsive, Plaintiff's counsel, without making any copies of the original tape and without producing it or even disclosing its existence to UBSFS, spoliated it by "trying to get rid of some of the background noise to make it more clearer." (Gross Decl., ¶ 4 at 26:14-16) Not content with this, Plaintiff's counsel, again without making any copies of the tape or revealing its existence or producing it to UBSFS, sent the original tape to an outside vendor with the intent that the vendor would further tamper with the original "to get rid of some of the background noise to make it clearer." (Gross Decl., ¶ 4 at 25:23-26:16, ¶ 5) Next, at Plaintiff's February 15 deposition, when the existence of the tape came to light, Plaintiff's counsel feigned surprise that the tape had not been produced, knowing full well that no copies of it had been made and that the original had been sent to an outside

vendor. (Gross Decl., ¶ 4 at 25:22-26:16.) Finally, Plaintiff's counsel did not take any steps to ensure that the outside vendor made copies of the original tape or properly safeguarded it. (Gross Decl., ¶ 5). All of these actions were undertaken in complete disregard of Plaintiff's obligation to permit UBSFS to inspect and copy the original recording as it existed on the day Plaintiff first had an anticipation that he would commence legal action against UBSFS and clearly establish bad faith.[2]

Based on the circumstances set forth above, the trier of fact can assume that the tape contained evidence that is unfavorable to Plaintiff. See Residential Funding, 306 F.3d at 109, Anderson, 2005 WL 2583715, at *3. Even if such relevance is not assumed, the evidence establishes that it is highly likely that the tape recording contained evidence supporting UBSFS' defense of this action, as the contents of the tape would likely have established the friendly relationship between Plaintiff and Tota, which would have assisted UBSFS in defeating Plaintiff's claims that he was subjected to a hostile work environment created by Tota's conduct.

Based on the foregoing, UBSFS should be granted an adverse inference instruction with respect to Plaintiff's tape recording of his post-termination conversation with Tota. At the very least, Plaintiff should be precluded from presenting any evidence concerning the substance of this conversation.

B.   Plaintiff's Spoliation of His Personal Computer

UBSFS' Request No. 34, further sought "[a]ll personal computers (desktops or laptops), blackberry devices or other electronic devices of Plaintiff, for inspection thereof for

---

[2] It is irrelevant for purposes of an adverse inference instruction that it was Plaintiff's counsel or his outside vendor whose conduct resulted in the loss of the original tape recording, and not actually Plaintiff himself. See Link v. Wabash RR Co., 370 U.S. 626, 633-34 (1962); Georgiadis v. First Boston Corp., 167 F.R.D. 24, 26 (S.D.N.Y. 1996); Beers v. Gen. Motors Corp., No. 97-CV-482, 1999 WL 325378, at *4-5 (N.D.N.Y. May 17, 1999) (on motion for sanctions for spoliation of evidence, plaintiff held responsible for negligence of his counsel and expert witness, and fact that plaintiff did not personally lose the evidence was irrelevant).

information relating to Plaintiff's employment at UBSFS, the termination of his employment at UBSFS and/or any allegation in the Amended Complaint." (Gross Decl., ¶ 6) The basis for this request was, *inter alia*, UBSFS' belief, based upon the nature of the emails Plaintiff sent and received from Tota, coworker Frank Catania and others on his computer at work, that Plaintiff's laptop computer contained emails and other documents that do not support his claim that he was subjected to a hostile work environment, but rather support UBSFS' defense that to the extent, if any, that Plaintiff received emails or was the recipient of comments from coworkers concerning his race, color or national origin, such conduct was not unwelcome to Plaintiff and he indeed engaged wholeheartedly in the conduct of which he now complains. As of November 14, 2005, Plaintiff was in possession of a laptop computer, which Plaintiff testified that he had used during the period 1999 through 2001 or 2002, a period relevant to this action. (Gross Decl., ¶ 4 at 21:3-10) Immediately following receipt of UBSFS' Request, at Thanksgiving of 2005, Plaintiff wiped his computer's hard drive clean of anything relating to UBSFS and gave it to his nephew, who resides in Pennsylvania. (Gross Decl., ¶ 4 at 21:5-25, ¶ 9).

Plaintiff's admitted conduct clearly warrants sanctions for spoliation. Indeed, it is difficult to envision more flagrant conduct in this regard. Plaintiff testified that he did not use this computer after 2002, yet he left its hard drive intact and retained possession of it for almost three years thereafter and only spoliated it after he received UBSFS' Request calling for its production. (Id., 21:15-22:9) Under these circumstances, sanctions up to and including dismissal of Plaintiff's complaint are warranted. See Plasse v. Tyco Electronics Corp., Civil Action No. 04-30056, 2006 WL 2623441 (D. Mass. Sept. 7, 2006) (dismissing claim where Plaintiff deleted documents on his computer soon after being put on notice that they may be relevant to the litigation).

Accordingly, at a minimum, UBSFS should be granted an adverse inference instruction that the jury can assume that Plaintiff's laptop computer contained documents and emails that do not support his claims that he was subjected to a hostile work environment and that would have supported UBSFS' defenses.

C.  Plaintiff's Spoliation of His Job Search File

Plaintiff testified at his deposition that after he filed his EEOC Charge in March 2004, he maintained a file folder containing documents concerning his job search efforts, but that he had been unable to locate this file to produce in response to UBSFS' Requests. (Gross Decl., ¶ 4 at 524:8-11; 528:22-529:6; 533:10-20). Plaintiff has not offered any explanation as to why he cannot locate the file, other than that he may have left it in Connecticut, or perhaps Pennsylvania. (Id., 528:22-529:6.)

Because Plaintiff has a duty to mitigate his damages (see, e.g., Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998)), any documents concerning Plaintiff's job search efforts are highly relevant to the issue of damages, should UBSFS be found liable on any of the claims in this action. Plaintiff acknowledges that he maintained a file containing documents concerning his job search efforts, that he knew he had an obligation to safeguard such documents,[3] and that, nevertheless, he failed to safeguard that file and inexplicitly cannot locate it. Plaintiff was, at best, grossly negligent in misplacing the file containing his job search documents.

Based on the foregoing the Court should sanction Plaintiff for his spoliation of his file containing documents concerning his job search efforts by granting an adverse inference instruction that the jury can assume that Plaintiff made no effort to search for a job, other than

---

[3] Plaintiff further testified that, as an attorney, he was aware that as of the time he began considering litigation that he had an obligation to safeguard documents that were relevant to his potential claims and to take whatever steps were necessary to ensure that such documents were not tampered with or destroyed. (Gross Decl., ¶ 4 at 537:16-24).

that reflected in the two emails he produced in discovery and his part-time employment at his counsel's law firm since January 2005. (Gross Decl., ¶ 10) Further, Plaintiff should be excluded from offering any evidence that he attempted to mitigate his damages by seeking suitable alternate employment.

## CONCLUSION

Based on the foregoing, UBSFS now moves this Court for an Order:

1) directing that the following adverse inference instructions will be given to the jury: (a) the jury may infer from the spoliation of the tape recording of Plaintiff's post-termination conversation with Tota that the tape would not support Plaintiff's testimony as to the substance of this conversation; (b) the jury may infer from Plaintiff's spoliation of his laptop computer subsequent to his receipt of UBSFS' demand for its production that the computer contained documents and information that would not support Plaintiff's claims and/or would contradict Plaintiff's allegations and testimony in this action; and (c) the jury may infer from Plaintiff's failure to preserve the file concerning his alleged job search efforts, that these documents would not support Plaintiff's allegations and testimony concerning his alleged job search efforts; or in the alternative

2) prohibiting Plaintiff from introducing at trial any evidence concerning his post-termination conversation with Tota, any matters as to which the Court concludes the spoliated laptop contained relevant evidence and Plaintiff's alleged mitigation efforts; and

3) awarding UBSFS its attorneys' fees and costs incurred in making this motion; and

4) awarding UBSFS such other and further relief and imposing such other sanctions on Plaintiff as the Court deems just and proper.

Dated: New York, New York
       October 2, 2006

                      EPSTEIN BECKER & GREEN, P.C.

                      By:     s/ Ronald M. Green
                            Ronald M. Green (RG-7766)
                            Dorothy Rosensweig (DR-6006)
                            Barbara A. Gross (BG-3048)
                      250 Park Avenue
                      New York, New York  10177-1211
                      (212) 351-4500
                      Attorneys for Defendant

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 2

THIS COURT SHOULD SANCTION PLAINTIFF
FOR HIS SPOLIATION OF RELEVANT EVIDENCE ..................................................... 3

    A.   Plaintiff's Spoliation of the Tape Recording ............................................................ 5

    B.   Plaintiff's Spoliation of His Personal Computer ..................................................... 8

    C.   Plaintiff's Spoliation of His Job Search File .......................................................... 10

CONCLUSION .................................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

Anderson v. Sotheby's Inc. Severance Plan,
  No. 04 Civ. 8180, 2005 WL 2583715 (S.D.N.Y. Oct. 11, 2005) .................................. 5, 8

Beers v. Gen. Motors Corp.,
  No. 97-CV-482, 1999 WL 325378 (N.D.N.Y. May 17, 1999) .......................................... 8

Byrnie v. Town of Cromwell,
  243 F.3d 93 (2d Cir. 2001) ............................................................................................ 4, 5

Georgiadis v. First Boston Corp.,
  167 F.R.D. 24 (S.D.N.Y. 1996) .......................................................................................... 8

Greenway v. Buffalo Hilton Hotel,
  143 F.3d 47 (2d Cir. 1998) .............................................................................................. 10

Kronisch v. United States,
  150 F.3d 112 (2d Cir. 1998) .......................................................................................... 4, 5

Link v. Wabash RR Co.,
  370 U.S. 626 (1962) .......................................................................................................... 8

Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees & Restaurant
  Employees Int'l Union, 212 F.R.D. 178 (S.D.N.Y. 2003) ................................................. 4

Pastorello v. City of,
  No. 95 Civ. 470, 2003 WL 1740606 (S.D.N.Y. April 1, 2003) ......................................... 5

Plasse v. Tyco Electronics Corp.,
  Civil Action No. 04-30056, 2006 WL 2623441 (D. Mass. Sept. 7, 2006) ................. 9, 10

Residential Funding Corp. v. DeGeorge Fin. Corp.,
  306 F.3d 99 (2d Cir. 2002) ......................................................................................... 4, 5, 8

Shaffer v. RWP Group, Inc.,
  169 F.R.D. 19 (E.D.N.Y. 1996) ......................................................................................... 4

West v. Goodyear Tire & Rubber Co.,
  167 F.3d 776 (2d Cir. 2001) .............................................................................................. 4