# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
KHAN,                               :    05-CV-4922 (SHS)
                                    :
              Plaintiff,            :    September 26, 2006
                                    :
         v.                         :    500 Pearl Street
                                    :    New York, New York
UBS FINANCIAL SERVICES, INC.,       :
                                    :
              Defendant.            :
------------------------------------X


       TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
            BEFORE THE HONORABLE DEBRA C. FREEMAN
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:        STEPHEN A. WHINSTON, ESQ.
                          SELIM ABLO, ESQ.
                          Berger & Montague, P.C.
                          1622 Locust Avenue
                          Philadelphia, PA  19103


For the Defendant:        DOROTHY ROSENSWEIG, ESQ.
                          BARBARA A. GROSS, ESQ.
                          Epstein, Becker & Green, P.C.
                          250 Park Avenue
                          New York, New York  10177


Court Transcriber:        SHARI RIEMER
                          TypeWrite Word Processing Service
                          356 Eltingville Boulevard
                          Staten Island, New York 10312




Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
                                                              2

 1              THE COURT:  Who do I have on the call, please?
 2              MS. ROSENSWEIG:  You have from Epstein, Becker &
 3   Green, Dorothy Rosensweig and Barbara Gross, representing
 4   defendants.
 5              THE COURT:  Welcome back.
 6              MS. ROSENSWEIG:  Thank you, Your Honor.
 7              MR. WHINSTON:  Representing the plaintiff, this is
 8   Stephen Whinston of Berger & Montague and with me is my
 9   colleague, Selim Ablo.
10              THE COURT:  Okay.
11         I do have a tape running on this in case anyone wants
12   to try to make a transcript of this call and I do have sitting
13   in, not one of my law clerks but a student intern who is
14   working with me this semester, his name is Ethan Cobrie [Ph.].
15         So if you are interested in getting a tape of this,
16   just let me know and we can take it from there.
17         I just got handed to me a letter from Mr. Whinston
18   dated September 25th.  I have been rather tied up.  So I just
19   got that and my clerk had printed out the cases that are
20   referred to; RLS and this other case which I had just been
21   looking at but I didn't even finish reading the two cases.  I
22   read the cover letter and I read half of the first case.  So
23   just so you know that on that issue that the letter is relevant
24   to which is whether the trial depositions or preservation
25   depositions or de bene esse depositions, or whatever you want
```

```
                                                                8
 1          Okay.
 2          I just think that it's only fair that if I'm going to
 3  look at authority on one side, I look at authority on the other
 4  side.
 5          All right.
 6          Let me move on, then, to the outstanding issues that
 7  I am aware of and if there's something else that I'm forgetting
 8  you will let me know.
 9          First, with respect to Ms. Eckstein, did you have a
10  chance to pull a copy of her separation agreement and take a
11  look at that paragraph that I referred to the last time around?
12          MS. GROSS:  Your Honor, this is Ms. Gross.
13          We have produced Paragraph 12 of the settlement
14  agreement.
15          THE COURT:  Okay.
16          I'm not going to require further production, nor am I
17  going to require production of the three additional documents
18  that were provided in this vein.  There were three letters that
19  were given to me to look over that related to Ms. Eckstein in
20  various ways and I have reviewed those and I am not going to
21  require production if on nothing else on relevance grounds
22  based on my understanding of the issues in this case.
23          Moving to the documents that were on the defendant's
24  privilege log there were the first three that were given to me
25  to look at apart from any rulings I made on the record when you
```

# EXHIBIT B

Page 2

```
 1  APPEARANCES:
 2
       BERGER & MONTAGUE, P.C.
 3     BY: STEPHEN A. WHINSTON, ESQUIRE
           and
 4         KEINO R. ROBINSON, ESQUIRE
       1622 Locust Street
 5     Philadelphia, Pennsylvania 19103
       (215) 875-3000
 6     swhinston@bm.net
       krobinson@bm.net
 7     Counsel for the Plaintiff
 8
       EPSTEIN BECKER & GREEN, P.C.
 9     BY: DOROTHY ROSENSWEIG, ESQUIRE
       250 Park Avenue
10     New York, New York 10177-1211
       (212) 351-4500
11     drosensweig@ebglaw.com
       Counsel for Defendant
12
13     CHARLES K. GRABER, ESQUIRE
       150 South Warner Road
14     Suite 156
       King of Prussia, Pennsylvania 19406
15     (610) 535-6420
       cgraber@graber-law.com
16     Counsel for Witness
17  ALSO PRESENT:
18
19     CLAUDIA M. COHEN, ESQUIRE
       Senior Associate General Counsel
20     UBS Financial Services, Inc.
       1200 Harbor Boulevard
21     Weehawken, New Jersey 07087
       (201) 352-0064
22
23     MAJOR KHAN
       DAVID LEVIN, Videographer
24
```

Page 3

```
 1              - - -
 2            I N D E X
 3  WITNESS                  PAGE NO.
 4  LORI ECKSTEIN
 5     By Mr. Whinston          6
 6              - - -
 7           E X H I B I T S
 8  NO.     DESCRIPTION       PAGE NO.
 9  Eckstein-1  Sworn statement,
            MK 000296 - 302    105
10
    Eckstein-2  Letter of warning,
11          D 2312 - 2314      181
12  Eckstein-3  Memoranda,
            D 0176 & 177       201
13
    Eckstein-4  Salary increase
14          review form,
            D 2456 - 2459      265
15
    Eckstein-5  5/5/03 E-mail,
16          D 0337             275
17  Eckstein-6  5/8/03 E-mail,
            D 0138             277
18
    Eckstein-7  Incentive or salary
19          increase worksheet,
            D 2443 - 2447      279
20
    Eckstein-8  2003 Mid Year
21          Self-Assessment,
            D 0122 - 124       289
22
    Eckstein-9  2003 Mid Year
23          Appraisal,
            D 0118 - 0121      294
24
```

Page 4

```
 1        DEPOSITION SUPPORT INDEX
 2
    Direction to Witness Not To Answer
 3  Page  Line   Page  Line
     86    3     129    12
 4  116   10     129    23
    123   12     130     9
 5  125   16     132    23
    127   21     150    22
 6  129    1
 7
    Request For Production of Documents
 8  Page  Line   Page  Line
     10   23     198    12
 9   13   20     305    20
    173   23
10
11
    Stipulations
12  Page  Line   Page  Line
    None
13
14
15
    Questions Marked
16  Page  Line   Page  Line
    None
17
```

Page 5

```
 1              - - -
 2      VIDEOGRAPHER:  We are now on
 3  the record.  My name is David
 4  Levin.  I'm the videographer
 5  employed by Esquire Deposition
 6  Services, 1600 JFK Boulevard, 12th
 7  floor, Philadelphia, Pennsylvania.
 8  This is a video deposition for the
 9  United States District Court,
10  Southern District of New York,
11  Number 05-CV4922.  Today's date is
12  Thursday, March 30, 2006 and the
13  video time is 10:08 a.m.
14      This deposition is being
15  held at 1622 Locust Street,
16  Philadelphia, Pennsylvania in the
17  matter of Major Khan versus UBS
18  Financial Services, Incorporated.
19  The deponent is Lori Eckstein.
20  This deposition is being taken on
21  behalf of the plaintiff.  All
22  counsel will be noted on the
23  stenographic record.
24      The court reporter's name is
```

Page 6

1  Linda Rossi, and she will now
2  swear this the witness.
3        - - -
4        LORI ECKSTEIN, after having
5  been duly sworn, was examined and
6  testified as follows:
7        - - -
8        MR. GRABER: Read and sign,
9  please.
10       - - -
11       EXAMINATION
12       - - -
13 BY MR. WHINSTON:
14   Q.  Would you state your name
15 and address for the record, please?
16   A.  Lori Eckstein, 1159 Bucks
17 Road, Perkasie, Pennsylvania.
18   Q.  Ms. Eckstein, my name is
19 Steve Whinston. I introduced myself to
20 you formally just before we started. I'm
21 one of the attorneys representing Major
22 Khan in this litigation against -- that
23 he has filed against UBS Financial
24 Services.

Page 7

1        Today I'm going to be asking
2  you some questions in connection with a
3  deposition which is being taken of you
4  pursuant to notice. There are certain
5  rules that I want to discuss with you
6  about the deposition just to make sure
7  that we both understand what this
8  procedure is all about.
9        You understand that you have
10 been sworn to provide answers under oath?
11   A.  I do.
12   Q.  And in order for the record
13 to be clear, it would be appreciated if
14 you would let me finish my questions
15 before responding, and I will let you
16 finish your answers before going on to
17 the next question. If ever you feel that
18 I've interrupted you or not allowed you
19 to finish your answer, please let me know
20 and I will give you that opportunity to
21 complete your answer. Okay?
22       If there are any ambiguities
23 or uncertainties in my questions, if you
24 don't understand anything that I'm

Page 8

1  asking, please ask me to rephrase and
2  I'll be happy to do that.
3    A.  Okay.
4    Q.  During the course of the
5  deposition, I will be showing you some
6  documents and asking you questions about
7  those documents. You have the absolute
8  right at any time during the deposition
9  to read the entire document cover to
10 cover if you want to in connection with
11 your response to those questions, even
12 though I may be asking you only about one
13 paragraph of the document. Do you
14 understand that?
15   A.  Yes.
16   Q.  You also have the -- I would
17 be happy to accommodate any request that
18 you may have to take a break, just let me
19 know and we'll be happy to do that.
20 We'll, generally speaking, try to take a
21 break every hour or hour and a half
22 whether or not you ask for it, because I
23 may need it. Okay?
24       From time to time your

Page 9

1  counsel may have questions -- may have
2  objections to make to the questions, and
3  he will instruct you what to do in light
4  of those objections.
5    A.  Okay.
6    Q.  Okay?
7    A.  Great.
8    Q.  Where are you currently
9  employed?
10   A.  I'm not.
11   Q.  When were you last employed?
12       MR. GRABER: Steve, Ms.
13   Eckstein, I'm sure, will tell you
14   that the last time she was
15   employed was with UBS. However,
16   there is a written agreement
17   between her and UBS that would
18   prohibit her from disclosing the
19   last date of her employment. I
20   should note for the record that
21   the existence of the agreement is
22   itself confidential. However, on
23   behalf of UBS, I have been advised
24   by Ms. Rosensweig and Ms. Cohen

Page 10

1    that Ms. Eckstein is permitted to
2    tell you that there is an
3    agreement but the terms and
4    conditions of the agreement are
5    confidential.
6  BY MS. ROSENSWEIG:
7       Q.   Okay. When were you last
8  employed by UBS?
9            MR. GRABER: Again, I
10       instruct the witness not to answer
11       based upon that agreement.
12  BY MR. WHINSTON:
13       Q.   When did you begin
14  employment by UBS?
15       A.   I believe October 2002.
16       Q.   And what was your employment
17  immediately prior to working for UBS?
18       A.   I was with Prudential
19  Securities as a branch manager in
20  Mooristown, New Jersey.
21       Q.   Morristown?
22       A.   Mooristown, New Jersey.
23            MR. WHINSTON: For the
24       record, just in regard to that

Page 11

1       last comment, we would request
2       production of this written
3       agreement that you've referenced
4       from UBS.
5            MS. ROSENSWEIG: Take it
6       under advisement.
7            MR. WHINSTON: Right.
8  BY MR. WHINSTON:
9       Q.   How long had you been a
10  branch manager?
11       A.   About three and a half
12  years.
13       Q.   And what were the
14  circumstances of your leaving that
15  position and taking the position with
16  UBS?
17       A.   I was recruited by UBS.
18       Q.   Who recruited you from UBS?
19       A.   There was an outside firm,
20  Leitner, Sarch & Associates and then
21  there was a number of people within UBS.
22       Q.   Where is that firm,
23  recruiting firm located, if you know?
24       A.   In New Jersey. I don't know

Page 12

1  exactly where.
2       Q.   Were you recruited for a
3  specific position?
4       A.   No.
5       Q.   Did you interview with
6  anyone at UBS?
7       A.   A number of people.
8       Q.   With whom?
9       A.   Barry Buchsbaum, Tim
10  Sennatt, Dave Zoll. And there may be
11  others, I just can't recall at this time.
12       Q.   When did those interviews
13  take place?
14       A.   Prior to me joining UBS and
15  up to a year prior to my start date.
16       Q.   So when were you -- when
17  were you first contacted by the
18  recruiting firm in connection with a
19  potential position with UBS?
20       A.   I don't recall the exact
21  date. But I know it was probably a year
22  in advance.
23       Q.   So sometime in the fall of
24  2001?

Page 13

1       A.   Possibly. I'm not certain.
2       Q.   When -- when was your first
3  interview with anyone at UBS?
4       A.   I don't know the exact date.
5       Q.   Was -- did you have any --
6  do you recall -- were there any
7  interviews that you had in connection
8  with this position which occurred in
9  2001?
10       A.   I don't know.
11       Q.   Do you keep a calendar?
12       A.   I do.
13       Q.   Would your -- do you have a
14  calendar that reflects meetings --
15       A.   Yes.
16       Q.   -- in connection with
17  this -- in connection with your recruit
18  by UBS?
19       A.   Yes.
20            MR. WHINSTON: We request
21       production of those documents.
22  BY MR. WHINSTON:
23       Q.   Did you continue to maintain
24  a calendar while you were employed by

# EXHIBIT C

```
1                          UNITED STATES DISTRICT COURT
                           SOUTHERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                         :
4    MAJOR KHAN,                         :
                                         :    05-CV-4922
5                    Plaintiff,          :
                v.                       :    August 4, 2006
6                                        :
     UBS FINANCIAL SERVICES, INC.,       :    500 Pearl Street
7                                        :    New York, New York
                     Defendants.         :
8    ------------------------------------X

9                    TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE DEBRA C. FREEMAN
10                    UNITED STATES MAGISTRATE JUDGE

11
     APPEARANCES:
12

13   For the Plaintiff:         STEPHEN A. WHINSTON, ESQ.
                                Berger & Montague, P.C.
14                              1622 Locust Street
                                Philadelphia, PA  19103
15
                                KEINO R. ROBINSON, ESQ.
16                              Berger & Montague
                                1622 Locust Street
17                              Philadelphia, PA  19103

18   For the Defendant:         DOROTHY ROSENSWEIG, ESQ.
                                Epstein, Becker & Green, P.C.
19                              250 Park Avenue
                                New York, NY  10177
20
                                BARBARA ROSE, ESQ.
21                              Epstein, Becker & Green, P.C.
                                250 Park Avenue
22                              New York, NY  10177

23
     Court Transcriber:         RUTH ANN HAGER
24                              TypeWrite Word Processing Service
                                356 Eltingville Boulevard
25                              Staten Island, New York 10312


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1   THE COURT: I have all of the papers I think that
2   anyone has submitted on any of these disputes, and I must tell
3   you it is a formidable stack.
4       We are going to record this. It's a digital
5   recording. It will be stored. If anyone wants a transcript of
6   it, it can be made. And this is <u>Khan v. UBS Financial</u>, and if
7   we could just have your appearances for the record and so I
8   know who's who.
9       MR. WHINSTON: If it may please the Court, Stephen
10  Whinston of the law firm of Berger & Montague for the plaintiff
11  and here is my colleague, Keino Robinson.
12      THE COURT: Okay. Good afternoon.
13      MR. ROBINSON: Good afternoon.
14      MS. ROSENSWEIG: Your Honor, Dorothy Rosensweig,
15  Epstein, Becker & Green, P.C., for the defendant and with me is
16  my colleague, Barbara Rose.
17      THE COURT: Okay. The people in the back are they
18  with you today?
19      MS. ROSENSWEIG: And behind me is [inaudible]. She's
20  in-house counsel for UBS.
21      THE COURT: Okay.
22      MR. WHINSTON: And behind me is the plaintiff, Major
23  Khan.
24      THE COURT: All right. Okay. I'll note that there
25  have been several motions made, all of which have now been

```
                                                              15
 1   they'll have fun saying --
 2           MR. WHINSTON:  It's spelled the same way.  Like
 3   Leonard Bernstein.
 4           THE COURT:  Eckstein pronounced Eckstein.  Okay.
 5           MR. WHINSTON:  Ms. Eckstein is the -- I would
 6   describe her as the principal accuser of Mr. Khan in connection
 7   with the events that led to his termination.  She was his
 8   immediate supervisor and when we deposed her, she declined to
 9   answer a number of very significant questions.  When did she
10   leave UBS?  What were the reasons for her departure?  And it
11   came out during the deposition that there was a termination
12   agreement and that in order for us to properly cross-examine
13   Ms. Eckstein, I believe we are entitled to that information.
14           If there were -- the circumstances of her departure
15   may reflect adversely on her performance of duty.  They may
16   relate to Mr. Khan's termination, they may relate to other
17   items that right now we're totally in the dark about.  And
18   because of the centrality of her role in connection with his
19   termination --
20           THE COURT:  Well, let's say she was terminated for
21   some misconduct that had nothing whatsoever to do with either
22   Mr. Khan or any kind of discriminatory conduct by her.  I mean,
23   what if she stole company property or made something up or what
24   if she, you know, was arrested for speeding and the company
25   decided they didn't want someone with an arrest record?  What
```

```
                                                              16
 1   if it had absolutely nothing to do with him?  Why would that be
 2   relevant?
 3              MR. WHINSTON:  I think perhaps in those instances it
 4   might not, but I think there's a whole range of circumstances.
 5   How she dealt with her subordinates and how she dealt with her
 6   co-workers is a critical issue in this case, and we believe
 7   we're entitled to know if the termination had anything to do
 8   with that.
 9              There may be a number of other different reasons that
10   I -- you know, I could come up with a list a couple of pages
11   long of potential reasons for her termination that would be
12   relevant here, and perhaps -- in addition --
13              THE COURT:  All this is assuming she was -- she was
14   terminated, as opposed to she -- did she testify that she
15   resigned or that she was terminated?
16              MR. WHINSTON:  No, there was a termination and there
17   was a termination agreement, and that termination agreement
18   limit -- apparently, from what we understand, limits the nature
19   of her ability to testify and to provide information
20   in litigation.  And if those constraints related to her
21   deposition testimony or if the payments made to her are
22   significant and strained --
23              THE COURT:  I'm sorry, limitations on her ability to
24   testify and yet she gave deposition testimony?
25              MR. WHINSTON:  She did, but she refused to answer --
```

17

1        THE COURT: So --

2        MR. WHINSTON: -- a number of questions such as when
3   she left. I mean, we don't know when she left UBS. She
4   refuses to answer that question, that simple factual question.
5   Was it the day after Mr. Khan was terminated? I don't know,
6   but that is a potentially -- that's a fact that's of potential
7   interest and potential relevance, and we just don't know the
8   answer to that.

9        There's a termination agreement that contains who
10  knows what, but it also provided for, as I understand it,
11  from as I gather from her testimony for the payment of funds to
12  Ms. Eckstein. And if it's a strange number and strange
13  circumstances a lot of inferences could be drawn from that, and
14  I believe we're entitled to that information so that we're --
15  so that we could ask the jury to draw those inferences in the
16  appropriate circumstances.

17       Right now we're in the dark and we don't know what
18  happened. We're entitled to that information. I would also
19  note, by the way, that I'm entirely comfortable with having
20  this be confidential. We're not seeking to disclose this
21  information. We have no grudge to bear against Ms. Eckstein.
22  She's not a defendant in the case, but she was Mr. Khan's
23  direct supervisor. She was the individual that was responsible
24  for his termination, and I believe we're entitled to find out
25  the reason for her termination and the agreement that she

                                                                18

1   reached with UBS about that.
2           THE COURT:  Now, what about this issue of potential
3   claims by her against the company?  What relevance would that
4   have?
5           MR. WHINSTON:  Well, if she's claiming that the
6   company acted in a certain way that may be consistent or
7   inconsistent with what Mr. Khan is alleging how the company
8   acted, we should be able to see that information.
9           THE COURT:  In other words, if she is claiming that
10  she -- she might have a claim for discrimination?
11          MR. WHINSTON:  For example.  Sure.  If she's claiming
12  that the same people that Mr. Khan alleged discriminated
13  against him, she alleges that they discriminated against her,
14  although it could have been sexual discrim -- gender
15  discrimination rather than national origin, racial
16  discrimination.  That would be relevant information.
17          THE COURT:  I'll hear from defendant on it.
18          MS. ROSENSWEIG:  Certainly, Your Honor.  You know,
19  it's a little bit difficult for me to speak, especially with
20  the plaintiff in the room because I'm concerned about breaching
21  the confidentiality of the agreement that exists, but
22  Mr. Whinston has misspoken in a number of respects.
23          Ms. Eckstein did not testify that she was terminated,
24  and that's not the case.  And if Your Honor examines the
25  agreement, you'll see in the agreement, you know, the terms of

22

1  there in a very long paragraph there, there is a parallel
2  provision that UBS has to give Ms. Eckstein notice.
3          THE COURT:  All right.  Well, why don't you provide
4  my -- do you have an extra copy today?
5          MS. ROSENSWEIG:  Yes, I do, Your Honor.
6          THE COURT:  Why don't you hand it up to my clerk?
7  I'm not -- it looks fairly lengthy.  I'm not going to sit her
8  and use your time by looking through it right now.  It was my
9  hope with respect to some documents if it came to it, I could
10 do that, but I think that I will continue to reserve and take a
11 look at it.
12         Now, there was a case that you had cited.  I don't
13 recall what case it is.  It talked about the policy and favor
14 of confidentiality and so on.
15         MS. ROSENSWEIG:  Yes.
16         THE COURT:  But the -- I recall -- at least I believe
17 I recall that in plaintiff's arguments, he points it out that
18 the circumstances of that case or other cases tended not to be
19 the kinds of circumstances we have here where we have
20 essentially a key player, an employee of the defendant who was
21 the act -- alleged actor.
22         Here you'd be talking about someone who would -- I
23 understand she's not a current employee, so therefore not a
24 party witness, but nonetheless talking more about people who
25 are more outside of litigation than she is.  She still has a

1  major role.  She's still a defendant's witness, I would
2  imagine.  You know, defendant's former employee and the
3  supervisor you're going to have to rely on.
4          Does that change the posture so that some of those
5  concerns about privacy and about confidentiality in general,
6  some of those concerns are different in this kind of context?
7          MS. ROSENSWEIG:  No, Your Honor, I don't think that
8  does because there is nothing -- and I think you'll see when
9  you read the agreement there's nothing in that agreement that
10 bears upon this case whatsoever.  And if plaintiff wants to
11 argue that there's a bias because there was an agreement
12 between Ms. Eckstein and UBS concerning the terms of her
13 departure from the company, he knows that already and he can
14 argue that and the Hous [Ph.] case, this -- v. AB Dick, and the
15 cite on that is 162 Miss 2d 263.  The language on point is at
16 pages 266 to 267, and that's New York County Supreme Court
17 1994.  It says that, that all that's necessary for exploration
18 of the buyer's credibility issue is the fact that there was an
19 agreement.  The specific terms of the agreement are not
20 relevant.  They are invasive of the privacy of a nonparty here.
21 They don't relate to any of the issues in this case.
22         THE COURT:  And what would either of you think of the
23 possibility of a production -- again, obviously Ms. Eckstein
24 might have her own views, so putting that aside for a moment,
25 what would either of the parties here think of the concept of

1  production of the document in redacted form to the extent that
2  I might find that any particular provisions might
3  have relevance here, not saying one way or the other that I
4  think that they do but, you know, not producing portions of the
5  agreement that would clearly seem to have no relevance here and
6  limiting production to those provisions that might possibly,
7  you know, be relevant if for nothing else than for cross-
8  examination?
9           What would either of you, it's just -- it's just off-
10 the-cuff reaction to that?
11          MR. WHINSTON:  That would be fine, Your Honor.  I
12 think we're not interested in material that's not relevant to
13 the case.  We're interested in material that either reflects on
14 Ms. Eckstein's management -- managerial capabilities and
15 actions that reflect on Mr. Khan or that reflect on the
16 circumstances of Mr. Khan's termination or that reflect on
17 potential areas of bias or that can be used in cross-
18 examination.
19          THE COURT:  Let me just say before you respond to
20 that, Counsel, I said I wasn't going to look now, but I can't
21 help it.  The document is now in front of me, and so I'm
22 flipping the pages.
23          At first glance I am not seeing anything that relates
24 to Ms. Eckstein's own performance.  The reason for
25 separation -- I won't even use the word "termination."  I mean,